

# The Attorney General of Texas

October 22, 1985

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas. Suite 700
Houston. TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Garry Mauro
Commissioner
General Land Office
Stephen F. Austin Building
1700 North Congress Avenue
Austin, Texas    78701

Opinion No. JM-364

Re: Whether the applicant holds land "under color of title" pursuant to article VII, section 4A, of the Texas Constitution, when there has been a break in the chain of title

Dear Mr. Mauro:

You have requested an opinion regarding the interpretation of the phrase "under color of title" in a 1981 amendment to the Texas Constitution. Tex. Const. art. VII, §4A. Section 4A provides, in pertinent part:

> (a) On application to the School Land Board, a natural person is entitled to receive a patent to land from the commissioner of the General Land Office if:
>
> (1) the land is surveyed public free school land, either surveyed or platted according to records of the General Land Office;
>
> (2) the land was not patentable under the law in effect immediately before adoption of this section;
>
> (3) <u>the person acquired the land without knowledge of the title defect out of the State of Texas or Republic of Texas and held the land under color of title, the chain of which dates from at least as early as January 1, 1932;</u> and
>
> (4) the person, in conjunction with his predecessors in interest:
>
> (A) has a recorded deed on file in the respective county courthouse and has claimed the land for a continuous period of at least 50 years as of November 15, 1981; and. . . .
> (Emphasis added).

You ask about the meaning of the phrase "under color of title" in subsection (a)(3). In particular, you ask about the effect of that phrase in two situations in which applicants for patents cannot show an unbroken chain of transfers. In one situation the applicant's chain of title shows an attempted transfer from the sovereign to the original grantee and then a gap from 1876 until 1921. The deed records for 1921 show a deed of trust from one G.G. Gaines, but the records do not show how G.G. Gaines acquired the property. The other situation is similar. There the applicant's chain of title shows a grant from the sovereign and an unbroken chain of transfers up to an attempted transfer in 1863 to one Francis Stevens. Subsequent records do not show how Francis Stevens disposed of the property, but the next document in the chain is a grant from one Mary McAdams in 1904.

You have refused these two applications for patents on the grounds that the applicants did not hold their property "under color of title." In doing so, you rely on the definition of "color of title" set out in the Texas statutes governing limitations on actions for title to or possession of land:

> By the term 'title' is meant a regular chain of transfers from or under the sovereignty of the soil, and by 'color of title' is meant a consecutive chain of such transfers down to such person in possession, without being regular, as if one or more of the memorials or muniments be not registered, or not duly registered, or be only in writing, or such like defect as may not extend to or include the want of intrinsic fairness and honesty; or when the party in possession shall hold the same by a certificate of headright, land warrant, or land scrip, with a chain of transfer down to him in possession. Id. (Emphasis added).

V.T.C.S. art. 5508. The courts have interpreted "color of title" to mean an unbroken chain of transfers, one or more of which is defective in form. State v. Sneed, 181 S.W.2d 983, 987 (Tex. Civ. App. - Galveston 1944), aff'd, 183 S.W.2d 566 (Tex. 1944); Veramendi v. Hutchins, 48 Tex. 531, 551 (1878). Under the statute there cannot be color of title "where there is a complete hiatus in the chain." Thompson v. Cragg, 24 Tex. 582, 596-97 (1859). See also Humphrey v. C.G. Jung Educational Center of Houston, 624 F.2d 637 (5th Cir. 1980). You ask whether you are correct in reading this statutory definition of "color of title" into the constitutional provision.

In determining the meaning of a constitutional amendment a court may look to the evils intended to be remedied and the good to be accomplished. Markowsky v. Newman, 136 S.W.2d 808, 813 (Tex. 1940). Also, a court must presume that the words of the amendment were carefully selected and must interpret those words as the people generally understand them. Id. Since it is likely that many voters'

understanding of the phrase "under color of title" was that it is a legal term of art, it is more helpful in this instance to look at what article VII, section 4A, was intended to remedy and the words the drafters selected to accomplish that intent.

The legislative analysis of the proposed constitutional amendment that became article VII, section 4A, states:

> The purpose of this resolution is to amend Art. VII of the Texas Constitution by adding a new Sec. 4a to remedy title defects in those instances where such defect initially occurred in alleged transfer of title from the sovereign.

House Committee on Constitutional Amendments, Bill Analysis, Tex. H.J.R. 117, 67th Leg. (1931). The committee analysis also explains that the resolution was drafted with a view to correcting known defective transfers by the state of title to certain properties in Leon County. Id. Presumably the drafters were focusing on the specific problems in Leon County when they selected the wording of the proposed amendment and they probably did not contemplate more complicated situations such as those in question in which there is not only a defect in the transfer from the state but also some other defect in the applicant's claim to the property in question. Indeed, in reviewing the proposed amendment the Texas Legislative Council pointed out that one of the arguments against the proposed amendment was that it was drawn too narrowly:

> The proposed amendment discriminates unfairly. It prescribes rigid eligibility requirements that would apply to only a small class of landholders, excluding other landholders in similar, but not identical, circumstances who may be just as worthy of relief.

Analysis of Proposed Constitutional Amendments, prepared by the Texas Legislative Council (1981), p. 9.

Because the proposed amendment focused on defective transfers from the state, not on other title problems, it makes perfect sense that the drafters chose the phrase "under color of title," with its well-established meaning in Texas statutory and case law, to describe situations to which the provision would be applicable.

Also, when a constitutional provision is adopted that already has a fixed meaning, as declared by the courts, the interpretation previously given is adopted at the same time. Travelers' Insurance Co. v. Marshall, 76 S.W.2d 1007, 1012 (Tex. 1934) (holding that the contract clause in the Texas Constitution had the same meaning as the older contract clause in the federal constitution).

Thus, in our opinion the phrase "under color of title" in article VII, section 4A, must be read in its statutory sense. The words in the statute were well suited to the specific problems the drafters sought to remedy. We must read those words in light of that intent. Thus, article VII, section 4A, gives your office authority to issue a patent only in a case in which the claimant can show an unbroken chain of transfers.

## S U M M A R Y

The phrase "color of title" in article VII, section 4A, of the Texas Constitution, has the same definition as "color of title" in article 5508, V.T.C.S.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton
Sarah Woelk